## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **FREDERICK GUIDER,** | : | **No. 3:25-CV-0017** |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| **v.** | : | |
| | : | |
| **GREGORY BRIGGS, *et al.,*** | : | |
| **Defendants** | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

### MEMORANDUM

Plaintiff Frederick Guider initiated the above-captioned *pro se* action under 42 U.S.C. § 1983,[1] alleging constitutional violations regarding incoming personal correspondence at Dauphin County Prison (DCP).  The court dismissed Guider's initial complaint under 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.  Guider filed an amended complaint, which the remaining Defendants move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim for relief.  After careful consideration, the court will grant in part and deny in part Defendants' motions to dismiss.

---

[1] Section 1983 creates a private cause of action to redress constitutional wrongs committed by state officials.  The statute is not a source of substantive rights; it serves as a mechanism for vindicating rights otherwise protected by federal law.  See Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002).

## I.     BACKGROUND

In his initial complaint, Guider alleged that he was a pretrial detainee at DCP and that on numerous occasions in 2023 and 2024, pictures sent electronically from his family and friends had been censored for no legitimate reason and without the ability to challenge the censorship.  (Doc. 1 at 4-5).  He further asserted that he was being charged $.03 or $.05 a minute to re-read emails and to review pictures that he had already paid to view.  (Id. at 5).  Finally, Guider alleged that some of his emails and pictures were being confiscated without notice or an opportunity to object to the confiscation.  (Id. at 5-6).  He named as defendants DCP Warden Gregory Briggs and Deb Alderson of ViaPath Technologies (ViaPath), the company that contracts with the prison to provide the electronic tablet system for viewing correspondence.  (Id. at 2-3).

The court screened Guider's Section 1983 complaint as required by 28 U.S.C. § 1915A(a).  (See generally Doc. 14).  As best as the court could discern, Guider was attempting to raise constitutional tort claims sounding in First Amendment free speech and Fourteenth Amendment deprivation of property without due process of law.  (See id. at 4-5).  His complaint, however, failed to state a claim for relief primarily for "more global reasons."  (Id. at 5).  That is, Guider had failed to allege personal involvement in the constitutional misconduct by either Defendant, (see id. at 5-7), and had failed to plausibly allege that

2

Alderson was a state actor for Section 1983 purposes, (see id. at 7).

Additionally, he had failed to plead the elements of a Fourteenth Amendment

deprivation of property claim. (See id. at 7-9).

The court thus dismissed Guider's complaint but granted him leave to

amend. (See id. at 9-10). Guider filed an amended complaint on June 30, 2025.

(Doc. 20). He sued the same two defendants (Warden Briggs and Deb Alderson)

and attempted to assert Section 1983 claims under the First, Fourth, Fifth, and

Eighth Amendments. (See generally id.).

The court dismissed Guider's Fourth, Fifth, and Eighth Amendment claims

under 28 U.S.C. § 1915A(b)(1), holding that his amended complaint failed to

plausibly allege such violations. (See Doc. 23 ¶¶ 1-3). Thus, the only remaining

claim in Guider's amended complaint alleges that Warden Briggs and Alderson

violated his First Amendment free speech rights with respect to incoming

personal correspondence.

Defendants now move to dismiss Guider's amended complaint under

Federal Rule of Civil Procedure 12(b)(6). (See generally Docs. 31, 35). Guider

has not responded in any way to these motions, so they are deemed unopposed.

See LOCAL RULE OF COURT 7.6. Nevertheless, because Guider is acting *pro se*,

the court will review the sufficiency of his remaining First Amendment free

3

speech claims rather than summarily dismiss the case for failing to oppose Defendants' motions to dismiss.

## II.    STANDARD OF REVIEW

In deciding a Rule 12(b)(6) motion to dismiss, courts should not inquire "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see Nami v. Fauver, 82 F.3d 63, 66 (3d Cir. 1996).  The court must accept as true the factual allegations in the complaint and draw all reasonable inferences from them in the light most favorable to the plaintiff.  See Phillips v. County of Allegheny, 515 F.3d 224, 229 (3d Cir. 2008).  In addition to the facts alleged on the face of the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents" attached to a defendant's motion to dismiss if the plaintiff's claims are based upon these documents.  Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993)).

When the sufficiency of a complaint is challenged, the court must conduct a three-step inquiry.  See Connelly v. Lane Const. Corp., 809 F.3d 780, 787 (3d Cir. 2016) (internal citations and quotation marks omitted) (footnote omitted).  At step one, the court must "tak[e] note of the elements [the] plaintiff must plead to

state a claim." Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009) (alterations in original)).  Second, the court should distinguish well-pleaded factual allegations—which must be taken as true—from mere legal conclusions, which "are not entitled to the assumption of truth" and may be disregarded.  Id. (quoting Iqbal, 556 U.S. at 679).  Finally, the court must review the presumed-truthful allegations "and then determine whether they plausibly give rise to an entitlement to relief." Id. (quoting Iqbal, 556 U.S. at 679).  Deciding plausibility is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 681.

Because Guider proceeds *pro se*, his pleadings are to be liberally construed and his amended complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]" Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citations omitted).  This is particularly true when the *pro se* litigant, like Guider, is incarcerated.  See Dooley v. Wetzel, 957 F.3d 366, 374 (3d Cir. 2020) (citation omitted).

## III.    DISCUSSION

Defendants posit multiple reasons why Guider's Section 1983 claims against them fail to state a claim for relief.  Alderson contends, *inter alia*, that Guider has failed to plead personal involvement and that she is not a state actor for Section 1983 purposes.  Warden Briggs argues that Guider fails to allege

personal involvement or show that the fees charged for electronic mail delivery are unconstitutional.  He also contends that qualified immunity bars any claim for money damages against him.

### A.   Personal Involvement

It is well established that, in Section 1983 actions, liability cannot be "predicated solely on the operation of *respondeat superior*." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted); see also Ashcroft v. Iqbal, 556. U.S. 662, 676 (2009) (affirming same principle in Bivens context).  Rather, a Section 1983 plaintiff must plausibly plead facts that demonstrate the defendant's "personal involvement in the alleged misconduct." Dooley v. Wetzel, 957 F.3d 366, 374 (3d Cir. 2020).  Personal involvement can include direct wrongful conduct by a defendant, but it can also be demonstrated through evidence of "personal direction" or "actual knowledge and acquiescence"; however, such averments must be made with particularity.  Id. (quoting Rode, 845 F.2d at 1207).  Furthermore, it is equally settled that involvement in the post-incident grievance process alone does not give rise to Section 1983 liability.  See id. (affirming dismissal of claims against prison officials for lack of personal involvement when officials' "only involvement" was "their review and denial of [plaintiff]'s grievance"); Lewis v. Wetzel, 153 F. Supp. 3d 678, 696-97 (M.D. Pa. 2015) (collecting cases); Brooks v. Beard, 167 F. App'x

923, 925 (3d Cir. 2006) (nonprecedential); <u>Alexander v. Gennarini</u>, 144 F. App'x 924, 925 (3d Cir. 2005) (nonprecedential) (explaining that prisoner's claims against certain defendants were "properly dismissed" because the allegations against them "merely assert their involvement in the post-incident grievance process").

Alderson is correct that Guider has failed to plausibly allege her personal involvement in the purported constitutional violations.  His amended complaint, like his original complaint, is silent as to how Alderson's conduct infringed his First Amendment rights.  After all, Alderson plays no role in screening or censoring his incoming personal mail or establishing the correspondence policies at DCP.  The mere fact that she is affiliated with or employed by ViaPath is insufficient to show personal involvement in constitutional misconduct.

As to Warden Briggs, Guider's amended complaint plausibly pleads personal involvement.  Guider alleges that he informed Warden Briggs on multiple occasions about the extensive censorship of his incoming mail and the issues with having to pay to view incoming correspondence, and that Warden Briggs told him that he was looking into the matter.  (<u>See</u> Doc. 20 ¶¶ 5, 8).  Guider maintains that nothing has changed or been rectified with respect to the censorship of his incoming personal mail.  (<u>Id.</u> ¶¶ 15, 16).  At the Rule 12(b)(6)

stage, these allegations sufficiently plead actual knowledge and acquiescence by Warden Briggs in the purported constitutional violations.

Accordingly, the court will dismiss any and all Section 1983 claims against Alderson pursuant to Rule 12(b)(6) for lack of personal involvement. Guider, however, has plausibly alleged personal involvement by Warden Briggs.

## B.    First Amendment Free Speech – Incoming Personal Mail

Inmates retain a First Amendment right to send and receive personal mail. See Jones v. Brown, 461 F.3d 353, 358 (3d Cir. 2006); Procunier v. Martinez, 416 U.S. 396, 408-09 (1974), overruled on other grounds by Thornburgh v. Abbott, 490 U.S. 401 (1989).  That right, like other constitutional rights in the prison context, is not absolute, as prison administrators must "strike a delicate balance" between "order and security of the internal prison environment" and the "legitimate demands of those on the 'outside' who seek to enter that environment . . . through the written word." Thornburgh, 490 U.S. at 407.  Thus, while a single instance of interference with incoming mail generally does not amount to a constitutional violation, see Bieregu v. Reno, 59 F.3d 1445, 1452 (3d Cir. 1995), abrogated on other grounds by Lewis v. Casey, 518 U.S. 343 (1996), repeated interference or censorship (i.e., withholding delivery of incoming correspondence) without a legitimate penological purpose may violate an inmate's First Amendment rights, see id.; Parrish v. Johnson, 800 F.2d 600, 604 (6th Cir.

8

1986); see also Van den Bosch v. Raemisch, 658 F.3d 778, 785 (7th Cir. 2011) (noting that prison officials may impose restrictions on inmate correspondence if those restrictions "are reasonably related to legitimate penological interests" (quoting Turner v. Safley, 482 U.S. 78, 89 (1987))).

Guider has plausibly stated an individual capacity First Amendment free speech claim with respect to his incoming personal mail. He alleges that DCP officials have "destroyed, lost, or confiscated" dozens of incoming personal letters and pictures from his friends and family without providing him any justification or opportunity to challenge the censorship. (See Doc. 20 ¶¶ 3, 4). That level of interference with incoming personal mail is actionable. And as noted above, Guider avers that he spoke repeatedly with Warden Briggs about this alleged unlawful censorship and Warden Briggs failed to take any corrective action.

Guider likewise plausibly alleges an official capacity First Amendment free speech claim against Warden Briggs. He asserts that DCP's policy of charging inmates a fee to receive and view incoming personal correspondence on an electronic tablet is unconstitutional. Guider avers that under DCP policy, inmates are required to pay per-minute fees to access incoming personal correspondence (email, mail, pictures, *etc.*) from family and friends on an electronic tablet supplied by ViaPath. (See id. ¶¶ 3, 5, 7, 11). Yet if a detainee or prisoner is

indigent and has no money in his "ViaPath account" for electronic tablet usage, he cannot access, read, or view incoming personal correspondence. (See id. ¶ 11). This paywall feature—which could result in indigent detainees and prisoners being unable to receive personal correspondence—may indeed infringe the First Amendment free speech rights of detainees and inmates at DCP.[2]

To determine whether a prison policy or regulation offends the constitution, courts are required to analyze the challenged policy under the factors set forth in Turner v. Safley, 482 U.S. 78 (1987), to ascertain whether the policy or regulation is "reasonably related to legitimate penological interests." Sharp v. Johnson, 669 F.3d 144, 156 (3d Cir. 2012) (quoting Turner, 482 U.S. at 89). Those four factors are:

> (1) there must be a "valid, rational connection" between the prison regulation and the legitimate, neutral governmental interest put forward to justify it (the "First Turner Factor"); (2) whether the inmate has alternative means of exercising the right at issue; (3) the burden that the accommodation would impose on prison resources; and (4) whether any ready alternatives to the regulation exist that would fully accommodate the inmate's rights at de minimis cost to valid penological objectives (Turner factors 2–4 are the "Other Turner Factors").

---

[2] It may also violate the First Amendment rights of those who send correspondence to detainees or prisoners at DCP. After all, "[c]ommunication by letter is not accomplished by the act of writing words on paper. Rather, it is effected only when the letter is read by the addressee. Both parties to the correspondence have an interest in securing that result, and censorship of the communication between them necessarily impinges on the interest of each." Procunier, 416 U.S. at 408.

10

Id. (citing Turner, 482 U.S. at 89-91). The prison bears the burden of establishing the first Turner factor. See id. If the prison can meet its "slight" burden by showing that there is a "valid, rational connection" between the policy and the government's "legitimate, neutral" interest put forward to justify the policy, the court proceeds to factors two through four. See id. The ultimate burden of persuasion that a prison policy or regulation is unconstitutional rests with the inmate. See id. at 157 (citation omitted).

In this case, Warden Briggs' motion to dismiss falls short. He acknowledges the gist of Guider's argument, stating, "Plaintiff claims that because he is indigent, it is a violation of his right to free speech to require inmates to pay to view mail on a tablet." (Doc. 36 at 12 (citing Doc. 20 ¶ 11)). Warden Briggs further recognizes that inmates "maintain a First Amendment right to communicate with family and friends, and that e-mail can be a means of exercising this right." (Id.).

Warden Briggs argues that Guider "has not shown (or alleged) the lack of a valid, rational connection" for the fee charged to access incoming personal correspondence electronically—implicating the first Turner factor.[3] (See id. at 13). But Guider does not have the burden to prove the first Turner factor, the

---

[3] Incidentally, the court notes that Warden Briggs fails to offer a legitimate, neutral interest in the challenged policy.

11

government does.  See Sharp, 669 F.3d at 156.  To the extent that Warden Briggs argues that Guider has failed to plead that the policy at issue serves no legitimate penological objective, that argument also fails.  It is quite possible that a plaintiff could admit in his complaint that there is a legitimate penological objective served by a particular prison policy yet still maintain that the policy violates the First Amendment because it is not reasonably related to that objective.  For example, a plaintiff could contend that the policy is not "reasonable" but instead represents "'an exaggerated response' to prison concerns."  See Thornburgh, 490 U.S. at 418 (quoting Turner, 482 U.S. at 90-91).  In other words, the plaintiff could argue that the policy is overkill.

Additionally, when considering the second, third, and fourth Turner factors (which determine whether the policy is reasonably related to a legitimate penological interest), those factors demonstrate that DCP's mail policy may be constitutionally infirm.  Assuming that Warden Briggs could proffer a legitimate, neutral government interest in the at-issue policy, the remaining Turner factors appear to favor Guider's constitutional challenge, at least at the pleading stage.

As to Turner factor two, there do not appear to be any alternatives for a DCP detainee or prisoner to access their incoming personal correspondence. See Overton v. Bazzetta, 539 U.S. 126, 135 (2003) (noting that if no alternative means of exercising the circumscribed constitutional right exist, that "would be

some evidence that the regulations were unreasonable"). Warden Briggs argues that DCP offers inmates an alternative method of communicating with their friends and family because they provide indigent inmates with prepaid envelopes. (See Doc. 36 at 13). This purported "alternative," however, only implicates *outgoing* correspondence and does not involve incoming personal mail.

As to the third factor, it is hard to see how an accommodation would impose a substantial burden on DCP resources. For example, it is not readily apparent how DCP resources or correctional staff (rather than ViaPath profits) would be burdened if detainees and inmates were able to view their incoming personal correspondence without paying a fee.

Finally, the fourth Turner factor asks whether there is "some obvious regulatory alternative that fully accommodates the asserted right while not imposing more than a *de minimis* cost to the valid penological goal." Overton, 539 U.S. at 136. Guider asserts (and Warden Briggs acknowledges) that DCP offers a low-cost alternative for outgoing correspondence: prepaid envelopes provided by the prison to inmates without charge. It is difficult to imagine that DCP cannot provide a "regulatory alternative" at *de minimis* cost with respect to viewing incoming personal correspondence such that indigent detainees' and prisoners' First Amendment free speech rights are not infringed. The court observes that in the Pennsylvania Department of Corrections (DOC) mail

13

system—which also utilizes a third-party contractor for personal mail service—while inmates must pay to send outgoing correspondence (after exhausting their monthly allotment of free, prepaid envelopes provided by the DOC), there is no charge for receiving incoming personal mail. See generally COMMONWEALTH OF PA., DEP'T OF CORR., INMATE MAIL & INCOMING PUBLICATIONS, Policy No. DC-ADM 803 (Aug. 10, 2020), https://www.pa.gov/content/dam/copapwp-pagov/en/cor/documents/about-us/doc-policies/803%20Inmate%20Mail%20and%20Incoming%20Publications.pdf.

In sum, Guider's amended complaint plausibly alleges individual and official capacity First Amendment free speech claims against Warden Briggs. Warden Briggs' motion to dismiss will be denied.

### C.    Qualified Immunity

"Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011) (citation omitted). The court has "discretion to decide which of the two prongs of qualified-immunity analysis to tackle first." Id.

"A Government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently

14

clear' that every 'reasonable official would [have understood] that what he is doing violates that right.'" Id. at 741 (alterations in original) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). "[C]learly established rights are derived either from binding Supreme Court and Third Circuit precedent or from a 'robust consensus of cases of persuasive authority in the Courts of Appeals.'" Bland v. City of Newark, 900 F.3d 77, 84 (3d Cir. 2018) (quoting Fields v. City of Philadelphia, 862 F.3d 353, 361 (3d Cir. 2017)).

Warden Briggs defines the right at issue as "a right to the free use of a tablet to send and receive emails and text messages," and claims that no such right is clearly established. (Doc. 36 at 14). First, this description of the at-issue right for qualified immunity deals only with Guider's official capacity unlawful policy claim. It does not address his individual capacity free speech claim alleging illegal censorship of his incoming personal mail.

Second, the court disagrees with Warden Briggs' characterization of the right at issue. A more accurate description of the right would be "an inmate's right under the Free Speech Clause of the First Amendment to receive incoming personal correspondence regardless of the inmate's financial status or ability to pay a fee charged for receiving that correspondence."

In any event, the court declines to address qualified immunity at the Rule 12(b)(6) stage where no facts have been developed to shed light on the potential

15

constitutionality (or unconstitutionality) of the at-issue DCP mail policy. It would be premature to find that qualified immunity applies when there are obvious factual disputes in this case that would inform both prongs of the qualified immunity analysis. Thus, Warden Briggs' qualified immunity argument will be denied without prejudice to his right to reassert that argument on a more fully developed record.

### D.    Leave to Amend

Generally, "*in forma pauperis* plaintiffs who file complaints subject to dismissal under Rule 12(b)(6) should receive leave to amend unless amendment would be inequitable or futile." Grayson v. Mayview State Hosp., 293 F.3d 103, 114 (3d Cir. 2002). Further leave to amend will be denied, as Guider has failed to plausibly plead non-First Amendment claims even after "amendments previously allowed." See Foman v. Davis, 371 U.S. 178, 182 (1962); Jones v. Unknown D.O.C. Bus Driver & Transp. Crew, 944 F.3d 478, 483 (3d Cir. 2019) (concluding that, where inmate plaintiff "has already had two chances to tell his story," providing "further leave to amend would be futile"). This case, therefore, will proceed on Guider's individual capacity First Amendment free speech and official capacity First Amendment free speech claims against Warden Briggs as more fully described herein.

16

## IV.    CONCLUSION

Based on the foregoing, the court will grant Deb Alderson's motion to dismiss (Doc. 31) and deny Warden Gregory Briggs' motion to dismiss (Doc. 35). An appropriate Order follows.

Date: 4/20/26

BY THE COURT:

_____
JUDGE JULIA K. MUNLEY
United States District Court